IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDNER GONZALEZ CABRERA, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-24-3200 |
| VARGAS SERVICES, LLC, et al., | * | |
| Defendants. | * | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Vargas Services, LLC and Algenis Vargas's (collectively, "Vargas") Motion to Dismiss the Amended Complaint. (ECF No. 14). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will deny Vargas' Motion.[1]

## I.   BACKGROUND

**A.   Factual Background**

This action arises out of Vargas's alleged violations of the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage

---

[1] Also pending before the Court is Vargas Services, LLC and Algenis Vargas's Motion to Dismiss the original Complaint (ECF No. 11). Plaintiffs Edner Gonzalez Cabrera and Alfonso Santos Reyes filed an Amended Complaint on January 3, 2025, after this Motion was filed. (ECF No. 13). Accordingly, this Motion will be denied as moot. See Due Forni, LLC v. Euro Rest Solutions, Inc., No. PWG-13-3861, 2014 WL 5797785, at *2 (D.Md. Nov. 6, 2014) (finding that an amended complaint generally moots a pending motion to dismiss the original complaint because the original complaint is superseded).

Payment and Collection Law ("MWPCL").[2] (Am. Compl. at 2, ECF No. 13).[3] Plaintiffs Edner Gonzalez Cabrera and Alfonso Santos Reyes (collectively, "Plaintiffs") worked at Vargas Services, an LLC owned and operated by Algenis Vargas, as van drivers from February 2021 through August 16, 2024 and 2017 through August 16, 2024, respectively. (Id. ¶¶ 9, 12, 24, 27, 47). Plaintiffs state that they were hired and later fired by Vargas; Vargas set their work schedule; they began each day at Vargas' lot; and, using Vargas' equipment and materials, they transported Vargas' clients to locations within Maryland set by Vargas. (Id. ¶¶ 13, 28, 38–53).

Plaintiffs allege that Gonzalez Cabrera typically worked between fifty-five and sixty-six hours per week for Vargas while Santos Reyes typically worked between fifty-five and seventy-eight hours per week. (Id. ¶¶ 15, 29). Plaintiffs were paid by check, with no accompanying paystub, a daily or weekly wage that resulted in an effective hourly rate of $11.02 for Gonzalez Cabrera from November 1, 2021–December 31, 2021, $8.60 for Santos Reyes from November 1, 2021–December 31, 2021, and $12.20 for both Plaintiffs from January 1, 2023–August 16, 2024. (Id. ¶¶ 17–18, 31–32). Plaintiffs allege that Vargas did not pay them the applicable minimum wage, overtime wages for hours worked in excess of 40 hours per week, or overtime rates for hours worked in excess of 40 hours per week. (Id. ¶¶ 19–22, 33–36).

---

[2] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Amended Complaint, (ECF No. 13), and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[3] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

2

B.   **Procedural History**

Plaintiffs filed an initial complaint in this Court on November 4, 2024. (ECF No. 1). On January 3, 2025, Plaintiffs filed an Amended Complaint against Defendants Vargas Services, LLC and Algenis Vargas. (ECF No. 13). They assert three Counts against Defendants for: overtime wage violations under FLSA (Count I); minimum and overtime wage violations under MWHL (Count II); and wage violations under the MWPCL (Count III). (Am. Compl. at 9–12). Plaintiffs seek monetary damages in the amount of $215,390.00. (Id. at 12).

Defendants filed an initial Motion to Dismiss the Complaint on December 20, 2024. (ECF No. 11). Upon the filing of the Amended Complaint, Defendants filed this instant Motion to Dismiss the Amended Complaint on January 16, 2025. (ECF No. 14). Plaintiffs filed an Opposition on February 20, 2025, (ECF No. 17), and Defendants filed a Reply on March 6, 2025, (ECF No. 18).

## II.   DISCUSSION

A.   **Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plaint statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

3

Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambert v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.     Analysis**

Vargas urges the Court to dismiss Plaintiffs' minimum and overtime wage claims against them because (1) Vargas is not a covered employer under the FLSA; (2) Plaintiffs were independent contractors rather than employees; (3) even if Vargas had been a covered employer and Plaintiffs had been employees—both of which Vargas disputes—Plaintiffs are exempt from the MWHL under the Motor Carrier Act exemption; (4) Plaintiffs'

remaining factual allegations fail to state a claim under the FLSA, MWHL, or MWPCL; and (5) Plaintiffs fail to show they had an employer-employee relationship with Algenis Vargas to warrant individual liability under the FLSA, MHWL, and MWPCL. (Mem. Supp. Defs.' Mot. Dismiss Am. Compl. ["Mot."] at 5–15, ECF No. 14-1). Plaintiffs counter that they allege sufficient facts showing that (1) Vargas is a covered employer under the FLSA; (2) there was an employer-employee relationship between the parties; (3) the Motor Carrier Act exemption does not apply to the work performed in this case; (4) Plaintiffs support a claim for minimum and overtime wages under the FLSA, MHWL, and MWPCL; and (5) Algenis Vargas can be held individually liable as an employer. (Pls.' Opp'n Defs.' Mot. Dismiss ["Opp'n"] at 3–18, ECF No. 17).

        1.        **FLSA and MWHL Covered Employer**

Congress enacted the Fair Labor Standards Act ("FLSA") "to protect all covered workers from substandard wages and oppressive working hours." Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1031–32 (4th Cir. 2020) (quoting Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739) (1981)). To accomplish these goals, the FLSA requires employers "to pay their employees both a minimum wage and overtime pay." Conner v. Cleveland County, North Carolina, 22 F.4th 412, 420 (4th Cir. 2022). Specifically, the FLSA requires employers to pay "not less than one and one-half times the regular rate" for each hour worked over forty hours during the workweek. See 29 U.S.C. § 207(a)(1). The MWHL, which is essentially the state equivalent of the FLSA, permits an employee to bring an action against an employer to recover unpaid wages. Md. Code Ann., Lab. & Empl. § 3-427(a); see Friolo v. Frankel, 819 A.2d 354, 361 (Md. 2005)

(noting that the MWHL is the "State parallel to the [FSLA]"). The MWPCL requires employers to pay their employees what they are owed regularly and in full upon departure. Md. Code Ann., Lab. & Empl. §§ 3-502(a)(1); 3-505(a). "Read together, [the MWHL and MWPCL] allow employees to recover unlawfully withheld wages from their employer, and provide an employee two avenues to do so." Peters v. Early Healthcare Giver, Inc., 97 A.3d 621, 625 (Md. 2014) (quoting Battaglia v. Clinical Perfusionists, Inc., 658 A.2d 680, 686 (Md. 1995)). "Claims under the FLSA and the MWHL can be analyzed together . . . '[b]ecause the requirements under the MWHL mirror those of the federal law.'" Gaither v. Davi Transportation Services, LLC, No. ELH-18-1447, 2020 WL 2614783, at *4 (D.Md. May 22, 2020) (quoting Turner v. Human Genome Sciences, Inc., 292 F.Supp. 738, 744 (D.Md. 2003)).

"To sufficiently plead an FLSA claim, and unlock FLSA's overtime protections, a plaintiff must plead that they either (1) engaged in commerce or in the production of goods for commerce (termed "individual coverage"); or (2) were employed in an enterprise engaged in commerce or in the production of goods for commerce (termed "enterprise coverage")." See Ergashov v. Glob. Dynamic Transp., LLC, No. JFM-15-1007, 2015 WL 13229505, at *3 (D.Md. Nov. 13, 2015) (internal quotes omitted).

Plaintiffs do not allege that Vargas was engaged in commerce or in the production of goods for commerce, (Opp'n at 3–4), so in order for Vargas to qualify as a covered employer under the FLSA, Plaintiffs must sufficiently plead enterprise coverage. The FLSA defines enterprise coverage as an enterprise that (1) "has employees engaged in commerce or in the production of goods for commerce, or . . . handling, selling, or

6

otherwise working on goods or materials that have been moved in or produced for commerce by any person[;]" and (2) "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i–ii). "Goods" are defined as "goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer or processor thereof." 29 U.S.C.S. § 203(i).

Plaintiffs have sufficiently alleged, and Vargas does not dispute, that the company made at least $500,000 in gross revenue. (Am. Compl. ¶ 68; Mot. at 6). Accordingly, the only question is whether Vargas employs workers who engage in commerce or the production of goods for commerce. Vargas argues that, as a transportation company, it is the ultimate consumer of the purported goods—vehicles and gasoline—so the employees did not handle goods or materials in interstate commerce under the FLSA. (Mot. at 7–8). Plaintiffs counter that the vans and gasoline used by Vargas employees are goods or materials in commerce. (Opp'n at 4–5). At bottom, the Court agrees with Plaintiffs.

"[I]t is well established that local business activities fall within the FLSA when an enterprise employs workers who handle goods or materials that have moved or have been produced in interstate commerce." Brock v. Hamad, 867 F.2d 804, 808 (4th Cir.1989). "The requisite connection to interstate commerce is shown where an employer has at least one employee who regularly ordered, received, and handled goods . . . that originated outside the [state]." Martin v. Deiriggi, 985 F.2d 129, 133 n. 2 (4th Cir.1992). In Rains v.

7

E. Coast Towing & Storage, LLC, the Eastern District of Virginia considered a similar issue. 820 F.Supp.2d 743 (E.D.Va. 2011). There, the Court found that defendants, who operated a towing company that towed vehicles within the Commonwealth of Virginia, met the "moved in or produced for interstate commerce" requirement in part because they used a tow truck produced out of state. Id. at 749. The court wrote that the "moved in or produced for commerce" test "includes situations where an employer purchases goods which have moved in interstate commerce and his employees use such goods in the course of their employment, even when the enterprise is the ultimate consumer of those goods." Id. (citing Brock, 867 F.2d at 807–08); see also Marshall v. Brunner, 668 F.2d 748, 751–52 (3d Cir.1982) (finding that employer who used trucks, gasoline, and other truck materials that had been manufactured out of state was subject to the FLSA).

Here, Plaintiffs allege that, in the course of their employment, Vargas' employees "operated vehicles that were manufactured outside of Maryland" and "purchased gasoline that was refined outside of Maryland." (Am. Compl. ¶ 70). At this stage, that is enough for Vargas to qualify as an "enterprise engaged in commerce" under the FLSA and, accordingly, the MWHL. The Court finds that Plaintiffs have sufficiently alleged that Vargas is a covered employer, and the Motion to Dismiss Counts I and II of the Amended Complaint will not be granted on this basis.

### 2. Employee Determination under the FLSA and MWHL

Vargas next argues that the Amended Complaint should be dismissed because Plaintiffs were independent contractors, not Vargas' employees. (Mot. at 9–10). Plaintiffs

contend that they have adequately alleged an employee/employer relationship with Vargas. (Opp'n at 6). At bottom, the Court agrees with Plaintiffs.

Under the FLSA and MWHL, only employees, not independent contractors, are authorized to seek recovery for unpaid wages. See Schultz v. Cap. Int'l Sec., Inc., 466 F.3d 298, 305 (4th Cir. 2006); Heath v. Perdue Farms, Inc., 87 F.Supp.2d 452, 456 (D.Md. 2000) (stating that the defendant is only liable for overtime violations under the FLSA or MWHL if there is an employment relationship between the defendant and plaintiffs). "To determine whether a worker is an employee under the FLSA, courts look to the 'economic realities' of the relationship between the worker and the putative employer." McFeeley v. Jackson St. Ent., LLC, 825 F.3d 235, 241 (4th Cir. 2016) (quoting Schultz, 466 F.3d at 304). "The touchstone of the 'economic realities' test is whether the worker is 'economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'" Id. (quoting Schultz, 466 F.3d at 304). "Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA]." Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947). Courts apply the same economic realities test to analyze employee status under the MWHL. See, e.g., Harbourt v. PPE Casino Resorts Maryland, LLC, 820 F.3d 655, 661 n.5 (4th Cir. 2016) ("[A]nalysis of the existence of an employment relationship is the same under the MWHL . . . as under the FLSA[.]") (citing Campusano v. Lusitano Const. LLC, 56 A.3d 303 (Md. App. 2012)); Randolph v. PowerComm Const., Inc., 7 F.Supp.3d 561, 569–72 (D.Md. 2014).

9

The economic realities test to determine employee status consists of six factors, none of which are dispositive:

> (1) [T]he degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

McFeeley, 825 F.3d at 241 (quoting Schultz, 446 F.3d at 304-05); see also Salinas v. Com. Interiors, Inc., 848 F.3d 125, 150 (4th Cir. 2017); Hall v. DIRECTV LLC, 846 F.3d 757, 774 (4th Cir. 2017).

Here, Plaintiffs have satisfied all six factors. First, Plaintiffs allege that Vargas had complete control over their work, including setting their pay and schedules, setting their transportation assignments, and instructing Plaintiffs on vehicle operation. (Am. Compl. ¶¶ 38–39, 52–55); see McFeeley, 825 F.3d at 242 (4th Cir. 2016) (finding employee/employer relationship where employer set the employees' work schedule and imposed written guidance on employees). Second, Plaintiffs had no opportunities for profit or loss based on their skills: they were paid a fixed pay and had no ability to increase their pay through more efficient work. (Am. Compl. ¶¶ 16, 30, 43); see Schultz, 466 F.3d at 308 (classifying security guards as employees where they were paid a set rate for each shift's work). Third, Vargas provided all equipment, and Plaintiffs made no individual investment. (Am. Compl. ¶¶ 40–41); see Schultz, 466 F.3d at 308 (finding that because employer provided all materials, the third factor weighed "heavily against a conclusion that the

agents were independent contractors"). Fourth, Plaintiffs' work did not require a high degree of skill. (Am. Compl. ¶ 44); see Quinteros v. Sparkle Cleaning, Inc., No. AW-07-0628, 2010 WL 3000865 (D.Md. July 26, 2010) (finding that the work done was "highly scripted, and did not involve much skill," which weighed in favor of finding that the plaintiffs were employees). Fifth, Plaintiffs had a full-time and long-term relationship with Vargas; Santos Reyes and Gonzales Cabrera worked exclusively for Vargas for seven and three years respectively. (Am. Compl. ¶¶ 9, 10, 24, 25); see Schultz, 466 F.3d at 309 ("The more permanent the relationship, the more likely the worker is to be an employee."). Plaintiffs worked for Vargas for fifty-five to seventy-eight hours per week, which impacted their ability to pursue other employment opportunities. (Am. Compl. ¶¶ 14, 15, 29). Finally, Plaintiffs' work driving laborers was essential to Vargas' business as a transportation company. See McFeely, 825 F.3d at 244 (finding employee/employer relationship where the work performed was essential to the employer's business). Accordingly, Plaintiffs have alleged an employer/employee relationship with Vargas, and Vargas' Motion to Dismiss Counts I and II of the Amended Complaint on this basis will be denied.[4]

---

[4] Vargas also argues that Plaintiffs' MWPCL claim should be dismissed for failure to allege an employee/employer relationship. (Mot. at 11–12). For the same reasons, the Court will deny Vargas' Motion to Dismiss Count III of the Amended Complaint for wage violations under the MWPCL. See Rollins v. Rollins Trucking, LLC, No. JKB-15-3312, 2016 WL 81510, at *4 (D.Md. Jan. 7, 2016) ("[C]ourts in Maryland and in this District have applied the economic-reality test to claims arising under the MWPCL.").

### 3. Motor Carriers Exemption to MWHL

Vargas also argues that Plaintiffs' MWHL claims should be dismissed because Plaintiffs are exempted from the MWHL under the Motor Carrier Act ("MCA") Exemption. (Mot. at 10–11). Plaintiffs argue that because they allege all their work was performed exclusively in Maryland, the MCA exemption does not apply to them. (Opp'n at 11). At this stage, the Court agrees with Plaintiffs.

The MCA is one of the exemptions to U.S.C. § 207(a)(1), the FLSA's overtime pay requirement. 29 U.S.C. § 31502(b). Under this exception, "[t]he Secretary of Transportation may prescribe requirements for qualifications and maximum hours of service of employees" of motor carriers "when needed to promote safety of operation." § 31502(b)(2). Under the MWHL, this exemption applies to any "employee for whom the United States Secretary of Transportation may set qualifications and maximum hours of service under 49 U.S.C. § 31502." Md. Code Ann., Lab. & Empl. § 3-415(c)(1); see Schilling v. Schmidt Baking Co., Inc., 876 F.3d 596, 603 (4th Cir. 2017) ("The MWHL, tracking the MCA Exemption in the FLSA, also contains an exemption that excludes from overtime protection employees for whom the DOT sets qualifications and maximum hours of service.").

Vargas does not argue that the MCA exemption under the FLSA applies, as Congress explicitly limited this exception to vehicles weighing over 10,0001 pounds. See SAFETEA-LU § 4142(a), 119 Stat. at 1747. No such limit applies to the MWHL MCA exemption. Schilling, 876 F.3d at 603 (citing Md. Code Ann., Lab. & Empl. § 3-415(c)(1)).

12

Accordingly, the Court will only consider whether Plaintiffs are subject to the MCA exemption under the MWHL.

The Court is mindful that "exemptions to the FLSA," and in turn the MWHL, "are to be 'narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" Rogers v. Sav. First Mortg., LLC, 362 F.Supp2d 624, 634 (D.Md. 2005) (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)). "The burden of invoking these exemptions rests upon the employer." Id. at 634–35.

An employee of a private motor carrier is subject to regulation under § 31502(b), and therefore falls under the MCA exemption, if the employee's performance of his duties affects the safe operation of motor vehicles that transport property in interstate commerce on public highways. Veney v. John W. Clarke, Inc., 28 F.Supp.3d at 441 (D.Md. 2014) (emphasis added).

Taking all allegations in the Complaint as true, as the Court must, Vargas is not subject to the MWHL's MCA exemption because its transportation of property took place solely in Maryland. The inquiry into whether an enterprise is engaged in interstate commerce for purposes of the MCA exemption is different than the inquiry for whether an entity is covered by the FLSA, and in turn the MWHL, in the first instance. "[A]n enterprise's merely being engaged in interstate commerce, as is sufficient to trigger coverage under the FLSA, is insufficient to serve as the basis for the MCA exemption. The latter is premised specifically upon transportation of property in interstate commerce." Id. at 443. "The question whether commerce is interstate or intrastate must be determined by

the essential character of the commerce . . . . " Atlantic Coast Line R. Co. v. Stand. Oil Co. of Kentucky, 275 U.S. 257, 268, (1927). Here, Plaintiffs have alleged that they picked up passengers in Maryland and transported them to drop-off locations in Maryland. (Am. Compl. ¶¶ 13, 28). At this stage, that is sufficient to show that Plaintiffs' performance of their duties affected only intrastate commerce, not interstate commerce. The Court cannot dismiss Plaintiff's claims on the basis of the MCA exemption. Vargas is free to raise the MCA defense later in the litigation after the exchange of discovery.[5]

4. **Failure to State a Claim**

Vargas also argues that Plaintiffs fail to state a claim under the FLSA, MWHL, and MWPCL because the Complaint makes "false allegations of fact" concerning their calculation of hourly pay. (Mot. at 12–14). Again, at this stage, the Court must accept all factual allegations in the complaint as true and construe the factual allegations in the light most favorable to Plaintiffs. Plaintiffs have adequately alleged that they regularly worked

---

[5] Vargas attaches an exhibit to its Reply which purports to show that Plaintiffs also transported passengers to DC. (Reply Supp. Mot. ["Reply"] Ex. 1, ECF No. 18-1). While a court may not ordinarily consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), this general rule is subject to several exceptions. For example, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to briefing for the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Courts may also consider documents referred to and relied upon in the complaint— "even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001). The text messages attached to Vargas' Reply are not integral to the Complaint, which makes no reference to them, and have not been authenticated. Vargas does not move in the alternative for summary judgment. Accordingly, the Court will not consider this document in resolving the Motion to Dismiss.

in excess of forty hours a week, (Am. Compl. ¶¶ 14, 15, 19, 29, 33), that they were paid a flat rate that at times fell below Maryland's minimum wage, (id. ¶¶ 17, 22, 31, 36), and that they were not paid overtime wages, (id. ¶¶ 16, 20, 21, 30, 34, 35). As Vargas points out, it is likely that some weeks Plaintiffs were compensated above minimum wage, (see Mot. at 13–14), "[b]ut these higher wages do not negate the allegations of below-minimum-wage payments in other weeks." Martinez v. K & S Mgmt. Servs., Inc., No. PWG-15-223, 2016 WL 808797, at *7 (D.Md. Mar. 2, 2016). At this stage, Plaintiffs' allegations are sufficient, and Vargas' Motion to Dismiss will be denied. See Hawkins v. Proctor Auto Serv. Ctr., LLC, No. RWT-09-1908, 2010 WL 1346416, at *1 (D.Md. Mar. 30, 2010) (denying motion to dismiss where plaintiff alleged he worked over forty hours per week and defendant did not compensate him for overtime).

  **5. Algenis Vargas' Individual Liability**

Finally, Vargas argues that all claims against Algenis Vargas in his individual capacity should be dismissed. (Mot. at 14–15). Because the Court finds that Algenis Vargas is an employer under the FLSA and MLSA, the Amended Complaint will not be dismissed against him in his individual capacity.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts determine whether an individual is an employer by looking to "the economic realities of the relationship between the employee and the putative employer." Caseres v. S & R Mgt. Co., LLC, No. AW-12-01358, 2012 WL 5250561, at *3 (D.Md. Oct. 24, 2012). The economic realities test looks to a number of factors, including "whether the alleged

employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2016). No single factor is dispositive; rather, the totality of the circumstances must be considered. Id.; see e.g., Speert v. Proficio Mortg. Ventures, LLC, No. JKB-10-713, 2011 WL 2417133, at *3 (D.Md. June 11, 2011).[6]

Viewing the complaint in the light most favorable to Plaintiffs, the Court will presume that allegations against Defendants collectively apply equally to Algenis Vargas individually. See Iraheta, 2012 WL 5995689, at *3 (stating that in considering a Rule 12(b)(6) motion to dismiss an individual FLSA defendant, the court will presume that all allegations made against defendants collectively also apply equally to defendants in their individual capacities). Here, Plaintiffs allege that Algenis Vargas had the power to hire and fire them and indeed did hire and fire them. (Am. Compl. ¶¶ 49–51). Plaintiffs also allege that Algenis Vargas set their work schedules and supervised their daily assignments. (Id. ¶¶ 53–54). They claim that Algenis Vargas both set their rate of pay and controlled the manner of pay by issuing and personally signing paychecks. (Id. ¶¶ 52, 56–58). These allegations state a plausible claim that Algenis Vargas is individually liable as an employer

---

[6] "Given that MWHL is 'the State parallel' to the FLSA, it is appropriate to assess an individual's liability as an 'employer' for overtime and minimum wage violations of the MWHL under the same economic realities test used in the FLSA context." Iraheta v. Lam Yuen, LLC, No. DKC-12-1426, 2012 WL 5995689, at *4 (D.Md. Nov. 29, 2012).

for violations of the FLSA and MWHL. Accordingly, Vargas' Motion will be denied to the extent it seeks dismissal of Algenis Vargas in his individual capacity.

### III. CONCLUSION

For the foregoing reasons, the Court denies Vargas' Motion to Dismiss (ECF No. 14). A separate Order follows. Entered this 3rd day of June, 2025.

/s/
George L. Russell, III
Chief United States District Judge